FILED - GR
August 5, 2011 3:37 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY _JSI_ /_____   SCANNED BY _____/_____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**1:11-cv-816**
**Robert J. Jonker**
**U.S. District Judge**

A D CHRISTIAN,

        Plaintiff,

v.

ENHANCED RECOVERY
COMPANY, LLC,

        Defendant.

_____/

## Complaint

### I. Introduction

1. This is an action for damages, brought by a consumer against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* and Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

### II. Jurisdiction

2. This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

### III. Parties

3. Plaintiff A D Christian is an unmarried, adult, natural person residing in Kent County, Michigan. Mr. Christian is a "consumer" and "person" as the terms are defined and/or used in the FDCPA. Mr. Christian is a "consumer," "debtor" and "person" as the terms are

1

defined and/or used in the MOC.

4.      Defendant Enhanced Recovery Company, LLC ("ERC") is a Delaware limited liability company, with offices at 8014 Bayberry Road, Jacksonville, Florida 32256. The registered agent for ERC in Michigan is Capitol Corporate Services, Inc., 712 Abbott Road, East Lansing, Michigan 48823. ERC uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. ERC regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. ERC is a "debt collector" as the term is defined and/or used in the FDCPA. ERC is qualified to do business in Michigan for the stated purpose of "Third party debt collections via interstate commerce." ERC is licensed (No. 2401002129) by the State of Michigan to collect delinquent consumer debts in Michigan. ERC is a "collection agency" and "licensee" as the terms are defined and/or used in the MOC.

## IV.    Facts

5.      Mr. Christian had a credit account with T-Mobile USA, Inc. ("T-Mobile") which he used to purchase goods and/or services for personal, family and household purposes. Any resulting obligation to pay money was a "debt" as the term is defined and used in the FDCPA and MOC.

6.      Mr. Christian had a dispute with T-Mobile regarding his account (#534942793). Mr. Christian discontinued his service with T-Mobile.

7.      Mr. Christian refused to pay the amount demanded by T-Mobile.

8.      Mr. Christian disputes owing T-Mobile the amount claimed by T-Mobile.

9.      Mr. Christian continues to refuse to pay the amount demanded by T-Mobile.

10.    T-Mobile hired ERC to collect the alleged debt from Mr. Christian.

11.    Mr. Christian shares a telephone and telephone answering machine with his mother, Beatrice Christian.

12.    In or about June 2011, ERC placed one or more telephone calls to the telephone used jointly by Mr. Christian and his mother and left a message on the telephone answering machine, stating that ERC was calling in an attempt to collect a debt from Mr. Christian. The message was heard by Mr. Christian's mother.

13.    The recorded message left by ERC for Mr. Christian was a "communication" as the term is defined and used in the FDCPA

14.    ERC did not obtain the prior consent of Mr. Christian to communicate with Mr. Christian's mother in connection with the collection of the alleged debt.

15.    ERC did not obtain the prior consent of Mr. Christian to communicate to Mr. Christian's mother that ERC was attempting to collect a debt from Mr. Christian.

16.    Mr. Christian has never given ERC permission to speak with Mr. Christian's mother regarding the alleged debt.

17.    A debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer. 15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

18.    The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. § 1692a(7).

19.    A debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such

consumer owes any debt. 15 U.S.C. § 1692b(2).

20.    The FDCPA states that a debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall, "only if expressly requested, identify his employer." 15 U.S.C. § 1692b(1).

21.    ERC disclosed the name of its company in the recorded messages left by ERC and heard by Mr. Christian's mother, without an express request for such information by Mr. Christian's mother, violating the FDCPA.

22.    Nothing in the law entitled ERC to leave a recorded message for Mr. Christian on a telephone voice mail.

23.    Nothing in the law entitled ERC to leave a recorded message for Mr. Christian on a telephone answering machine in efforts to collect a debt from Mr. Christian, when the message might be heard by someone other than Mr. Christian.

24.    ERC could have used other methods to communicate with Mr. Christian.

25.    ERC could have chosen to communicate with Mr. Christian by postal mail.

26.    ERC could have chosen to communicate with Mr. Christian by speaking directly to Mr. Christian by telephone.

27.    ERC could have chosen not to leave a recorded message for Mr. Christian on a telephone answering machine.

28.    ERC violated 15 U.S.C. § 1692c(b) by leaving a recorded message on a voice mail, which communicated to Mr. Christian's mother that ERC was attempting to collect an alleged debt from Mr. Christian. *Berg v. Merchants Association Collection Division, Inc.*, 586 F.Supp. 1336 (S.D. Fla. 2008).

29.     ERC knowingly assumed the risk of violating the FDCPA by leaving a message on a telephone answering machine, stating that ERC was calling to collect a debt from Mr. Christian, and knowing that the message might be heard by someone other than Mr. Christian.

30.     ERC failed to maintain procedures reasonably adapted to avoid disclosing to a third party that a consumer owed a debt. Instead, ERC left recorded messages for the consumer on a telephone answering machine, knowing it was possible that the message might be heard by someone other than the consumer.

31.     ERC failed to maintain procedures reasonably adapted to avoid disclosing to a third party that Mr. Christian owed a debt. Instead, ERC left a recorded message for Mr. Christian on a telephone answering machine, knowing that it was possible that the message might be heard by someone other than Mr. Christian.

32.     ERC scripted and intended to speak the words that were spoke by ERC when leaving a message on a telephone answering machine for Mr. Christian in connection with efforts to collect a debt from Mr. Christian.

33.     In or about June 2011, Mr. Christian spoke by telephone with a male ERC employee at extension 714. The ERC employee stated that ERC had been hired by T-Mobile to collect an alleged debt from Mr. Christian in the amount of $441.88. The ERC employee stated that the original account number was 534942793 and the ERC file number was 47405232. Mr. Christian stated that the telephone number ERC had been calling was shared by Mr. Christian and Mr. Christian's mother. Mr. Christian stated that he did not want ERC to call the telephone number and leave messages on the answering machine because the messages are heard by Mr. Christian's mother. Mr. Christian stated that he had received nothing in writing from ERC. Mr.

5

Christian stated that he was disputing the alleged debt. Hearing that, the ERC employee stated: "I know your concerns now. I mean, no one wants, you don't want your mom receiving these calls. That's understandable, you know, and, you, but, you're, again, as long as this debt stays in my office, until we can get, like, some kind of arrangement or representation, of this, of, of you trying to take care of this balance, okay, those efforts are gonna continue." Mr. Christian again stated that he resided with his mother. Hearing that, the ERC employee stated: "I mean, okay, well, well, okay, here's, here's, I'm pretty much getting a bigger picture and understanding of your situation. Okay, um, how much of this balance can you get your hands on today so we can, we can start working on, on your account and stop the collection efforts on it, including calls to your, to your residence?" The ERC collector stated that the account had not yet been reported to the credit bureaus, but that he could not say how much longer that would be the case. Mr. Christian again stated that he disputed the debt.

34.     ERC and its employee wrongfully represented or implied that ERC would continue to telephone and communicate to Mr. Christian's mother that ERC was attempting to collect a debt from Mr. Christian unless Mr. Christian agreed to pay the alleged debt.

35.     ERC and its employee falsely represented or implied that no derogatory information regarding the alleged debt had yet been reported to the consumer reporting agencies, but that ERC was about to report derogatory information regarding the alleged debt to the consumer reporting agencies unless Mr. Christian made arrangements with ERC to pay the alleged debt.

36.     ERC failed to send Mr. Christian a timely notice of his rights as required by the FDCPA, 15 U.S.C. § 1692g and Michigan law.

6

37.     The ERC employee who spoke by telephone with Mr. Christian intended to speak the words he spoke to Mr. Christian.

38.     The acts and omissions of ERC and its employees done in connection with efforts to collect a debt from Mr. Christian were done intentionally and wilfully.

39.     ERC and its employees intentionally and wilfully violated the FDCPA and MOC.

40.     As an actual and proximate result of the acts and omissions of defendant and its employees, plaintiff has suffered actual damages and injury, including but not limited to, fear, stress, mental anguish, emotional stress, acute embarrassment and suffering for which he should be compensated in an amount to be established by jury and at trial.

## V.     Claims for Relief

### Count 1– Fair Debt Collection Practices Act

41.     Plaintiff incorporates the foregoing paragraphs by reference.

42.     Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)     Defendant violated 15 U.S.C. § 1692b;

b)     Defendant violated 15 U.S.C. § 1692c;

c)     Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

d)     Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

7

e)      Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means

to collect or attempt to collect a debt from plaintiff; and

f)      Defendant violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2 – Michigan Occupational Code

43.     Plaintiff incorporates the foregoing paragraphs by reference.

44.     Defendant has violated the MOC. Defendant's violations of the MOC include,

but are not necessarily limited to, the following:

a)      Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading,

untrue, or deceptive statement or claim in a communication to collect a debt;

b)      Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication

with a debtor the following: (i) the legal status of a legal action being taken or

threatened and (ii) the legal rights of a creditor or debtor;

c)      Defendant violated M.C.L. § 339.915(m) by bringing to public notice that a

consumer is a debtor;

d)      Defendant violated M.C.L. § 339.915(n) by using a harassing, oppressive and

abusive method to collect a debt; and

e)      Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure

8

designed to prevent a violation by an employee;

f)      Defendant violated M.C.L. § 339.918; and

g)      Defendant violated M.C.L. § 339.919.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)      Actual damages pursuant to M.C.L. § 339.916(2);

b)      Treble the actual damages pursuant to M.C.L. § 339.916(2);

c)      Statutory damages pursuant to M.C.L. § 339.916(2); and

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

## Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: August 5, 2011

Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com